IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DIANNE TORRES individually and on behalf of E.T., minor child, and JOSE TORRES individually and on behalf of E.T., a minor child, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | NO. 7:22-CV-99-FL |
| v. | ) ) | |
| SAMPSON COUNTY BOARD OF EDUCATION, | ) ) ) | |
| Defendant. | ) | |

- - - - -

| | | |
|---|---|---|
| SAMPSON COUNTY BOARD OF EDUCATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| JOSE TORRES individually and on behalf of E.T., a minor child; DIANNE TORRES individually and on behalf of E.T., minor child; and E.T. a minor child, by and through his Legal Guardians, Jose Torres and Dianne Torres, | ) ) ) ) ) ) ) ) | NO. 7:22-CV-100-FL |
| Defendants. | ) | |

These related cases are before the court on motions to dismiss by defendant in case No. 7:22-CV-99-FL (DE 11) (the "Fee Case"), and by defendants in case No. 7:22-CV-100-FL (DE 11) (the "Review Case"). The issues raised are ripe for ruling. For the following reasons, the motions are denied.

# STATEMENT OF THE CASES

A.  Fee Case

In the Fee Case commenced on June 24, 2022, plaintiffs, who are the adoptive parents of their minor son, E.T., (hereinafter, the "parents"), claim that they are entitled to attorney's fees and costs incurred in obtaining a favorable March 28, 2022, decision by a North Carolina Administrative Law Judge ("ALJ") (hereinafter, the "underlying decision") on an administrative complaint under the Individuals with Disabilities Education Improvement Act, 20 U.S.C. §§ 1400 et seq. ("IDEA"). In the underlying decision, the ALJ invalidated a long-term suspension of E.T. by defendant Sampson County Board of Education (the "Board") that was premised upon E.T.'s inappropriate touching of a female student. The parents seek $172,666.57 in attorney's fees and costs, in addition to fees and costs incurred in pursuing the instant action.

The Board filed the instant motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), on the basis that the Fee Case is time barred. In opposition, the parents rely upon a document published by the Public Schools of North Carolina, titled "Parent Rights & Responsibilities in Special Education: N.C. Notice of Procedural Safeguards."

B.  Review Case

In the Review Case, which commenced on the same day as the Fee Case, the Board seeks judicial review of the underlying decision, as an aggrieved party under IDEA, 20 U.S.C. § 1415(i)(2)(A). It asserts five counts in its complaint, claiming that the ALJ erred in the underlying decision because it: 1) lacked authority to reject school administrators' findings as to E.T.'s misconduct, 2) failed to show deference to the Board's factual findings, 3) made erroneous conclusions of law, 4) made unsupported findings of fact, and 5) made unsupported credibility determinations. The Board seeks the following relief: a) declaration that the Board is the prevailing

2

party on all issues, b) order vacating the underlying decision, c) order finding substantively and procedurally appropriate the school administrators' decision regarding whether E.T.'s misconduct was a manifestation of his disabilities, and d) award of costs to the Board.

Thereafter, the parents, who are defendants in the Review Case, filed the instant motion to dismiss all claims therein for lack of subject matter jurisdiction and for failure to state a claim, pursuant to Rule 12(b)(1) and Rule 12(b)(6).[1] The parents rely upon exhibits comprising copies of unpublished decisions by District of Columbia and Michigan educational agencies. In opposition, the Board relies upon an additional unpublished decision by a Michigan educational agency.

### STATEMENT OF THE FACTS

The facts alleged in the Review Case may be summarized as follows.[2] According to the Board's complaint, "E.T. is a thirteen-year-old rising seventh grader in the Sampson County Schools." (Compl. ¶ 2). In the 2021-22 school year he attended Roseboro-Salemburg Middle School. He "has diagnoses of selective mutism, attention-deficit hyperactivity disorder (ADHD), and oppositional defiant disorder (ODD)." (Id. ¶ 3). "E.T. qualifies for special education services under [IDEA] as a student with an Other Health Impairment (OHI)." (Id. ¶ 4).[3]

In October of 2021, E.T. left his classroom, went down the hallway to another teacher's classroom, approached a female student, and allegedly "touched the student on her breast and buttocks after she told him to 'get away.'" (Id. ¶ 5). According to the Board's complaint, "E.T. grabbed the

---

[1] In both cases, the court stayed scheduling conference activities upon filing of the instant motions.

[2] The court sets forth the allegations in the Review Case as pertinent to the analysis of the motion to dismiss in that case, and as background for the analysis of the motion to dismiss in the Fee Case.

[3] Under IDEA, a "child with a disability" includes a child – "(i) with intellectual disabilities, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance . . . , orthopedic impairments, autism, traumatic brain injury, other health impairments, or specific learning disabilities; and  (ii) who, by reason thereof, needs special education and related services." 20 U.S.C. § 1401(3)(A) (emphasis added).

3

Case 7:22-cv-00099-FL   Document 15   Filed 12/14/22   Page 3 of 19

same female student's breasts in April of 2021." (Id. ¶ 6). Following investigation of this alleged misconduct, E.T.'s principal suspended him for ten days and considered recommending a long-term suspension depending on the outcome of a "manifestation determination review" ("MDR"). (Id. ¶ 7). According to the Board's complaint, such an MDR is convened, as required by the IDEA, to determine whether a student's alleged misconduct "was caused by, or had a direct and substantial relationship to, his disability." (Id. ¶ 8).[4]

On October 18, 2021, a "MDR Committee" at E.T.'s school "met and determined that E.T.'s conduct was not a manifestation of his disability" (hereinafter, the "manifestation determination"). (Id. ¶ 9). "The MDR Committee having decided the conduct was not a manifestation of E.T.'s disability, the school principal recommended a long-term suspension for E.T." (Id. ¶ 10). An administrative-level hearing was held on the principal's recommendation for long-term suspension, at which hearing E.T. was represented by legal counsel. "The hearing resulted in a finding that E.T. had committed misconduct constituting sexual assault, and E.T. was suspended for the remainder of the 2021-22 school year" (hereinafter, the "long-term suspension") (Id. ¶ 11).

On January 18, 2022, the parents filed a due process petition in the North Carolina Office of Administrative Hearings ("OAH").[5] "The Petition requested an expedited hearing on whether the school district had denied E.T. a free, appropriate public education when the district (1) allegedly wrongfully determined that E.T.'s conduct was not a manifestation of his disability, and (2) allegedly did not provide E.T. special education and related services following the MDR." (Id. ¶ 12). The ALJ

---

[4] See, e.g., 20 U.S.C. § 1415(k)(1)(F) (requiring school determination whether behavior violating school code of conduct "was a manifestation of the child's disability").

[5] IDEA "requires states to hold a due process hearing whenever a parent lodges a complaint regarding services provided to his or her child." E.L. ex rel. Lorsson v. Chapel Hill-Carrboro Bd. of Educ., 773 F.3d 509, 513 (4th Cir. 2014) (citing 20 U.S.C. § 1415(f)). "In North Carolina, ALJs conduct the due process hearings required by the IDEA." Id. OAH "appoints these ALJs through a memorandum of agreement with the State Board" of Education. Id. (citing N.C. Gen. Stat. § 115C–109.6(a), (j)).

4

bifurcated the issues in the case and convened an expedited hearing on the question of whether the Sampson County Schools correctly determined that E.T.'s October 2021 conduct was not a manifestation of E.T.'s disability. The hearing before the ALJ spanned seven days, at which the Board presented testimony of four witnesses, and the parents presented testimony of three witnesses. Following the hearing, the ALJ issued the underlying decision, dated March 28, 2022, reversing the manifestation determination, invalidating the long-term suspension, ordering E.T. placed back into Roseboro-Salemburg Middle School, and declaring the parents "the prevailing party on the manifestation determination" issue. (DE 1-1 at 52).[6]

## COURT'S DISCUSSION

A.  Standard of Review

A motion to dismiss under Rule 12(b)(1) may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Where a defendant raises a "facial challenge[ ] to [subject matter jurisdiction] that do[es] not dispute the jurisdictional facts alleged in the complaint," the court accepts "the facts of the complaint as true as [the court] would in context of a Rule 12(b)(6) challenge." Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018). When a defendant challenges the factual predicate of subject matter jurisdiction, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

---

[6] That portion of the administrative proceedings pertaining to whether the Board provided E.T. special education and related services following the MDR is not subject of the instant Review Case.

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).[7]

B. Analysis

    1. Subject Matter Jurisdiction in Review Case

The parents contend that this court lacks subject matter jurisdiction to provide the Board with the relief it seeks in the Review Case, particularly where it seeks a finding that the MDR was "substantively appropriate" and "procedurally appropriate," and where it seeks an order vacating the ALJ's decision. (Parents' Mem. (DE 12) at 12). The court disagrees.

IDEA provides that "any party aggrieved by the findings and decision" by a state education agency, such as the underlying decision by the ALJ in the instant case, "shall have the right to bring a civil action with respect to the complaint presented" to the ALJ, which action may be brought in federal district court. 20 U.S.C. § 1415(i)(2)(A). "The complaint, and therefore the civil action, may concern 'any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child.'" Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley, 458 U.S. 176, 204–05 (1982) (quoting §

---

[7]     Internal citations and quotation marks are omitted from all citations unless otherwise specified.

1415(b)(1)(E)). In reviewing the underlying decision, "the court – (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, <u>shall grant such relief as the court determines is appropriate</u>." 20 U.S.C. § 1415(i)(2)(C) (emphasis added).

Federal district courts thus "are authorized to award a broad range of remedies" in an IDEA action. <u>Johnson v. Charlotte-Mecklenburg Sch. Bd. of Educ.</u>, 20 F.4th 835, 840 (4th Cir. 2021). Such an action "is an original civil action, not an appeal from a state administrative agency." <u>Id.</u> at 844. "District courts conduct a modified de novo review, giving due weight to the underlying administrative proceedings, but are empowered to receive and consider evidence outside the administrative record." <u>Id.</u>; see <u>E.L. ex rel. Lorsson</u>, 773 F.3d at 517. As such, "a district court does not simply affirm, reverse, or vacate the decision of the state administrative agency." <u>Johnson</u>, 20 F.4th at 840. "Instead, it offers its own independent de novo review and conclusion." <u>Id.</u> "If the district court fashions a different remedy, that remedy is imposed by the district court itself as an enforceable order." <u>Id.</u>

The action brought by the Board and the relief sought therein are well within the subject matter jurisdiction of this court. As an initial matter, the complaint seeks "relief from" the ALJ's underlying decision, (Compl. ¶ 1), which is the relief authorized by IDEA, § 1415(i)(2)(A). With respect to the Board's request for a finding that the manifestation determination was "substantively appropriate" and "procedurally appropriate," such procedural and substantive questions are at the core of "a court's inquiry in suits brought under" IDEA. <u>Rowley</u>, 458 U.S. at 206. Where the underlying decision reached conclusions of law that the manifestation determination was not "substantively appropriate" or "procedurally appropriate," (DE 1-1 at 47-49), it is within the court's jurisdiction under IDEA to

7

make "its own independent de novo review and conclusion" regarding those issues. Johnson, 20 F.4th at 840.

Similarly, when taken together with the foregoing relief requested, the Board's request that the court "[v]acate the ALJ's decision" does not exceed this court's jurisdiction. (Compl. ¶ 186). The practical result of finding the manifestation determination substantively and procedurally appropriate, if that is ultimately the court's decision, would be to supplant the ALJ's decision, or in a practical sense to vacate it. Likewise, if the court determines that the Board is "the prevailing party on all issues," the ALJ's decision directly to the contrary cannot stand, and must, in a practical sense, be vacated. Given IDEA's authorization to the district court to "grant such relief as the court determines is appropriate" id. § 1415(i)(2)(C), an award of relief having such an effect does not fall outside of this court's jurisdiction.

The parents' reliance on Johnson does not support dismissal of the instant Review Case for lack of subject matter jurisdiction. There, in explaining the standard of review in an action under IDEA, the court stated "a district court does not simply affirm, reverse, or vacate the decision of the state administrative agency." Johnson, 20 F.4th at 844 (emphasis added). This is not to be read as a limitation on the court's authority, but rather a recognition of the breadth of the court's authority. Indeed, in the very next sentence, the court states that the court "offers its own independent de novo review and conclusion." Id. "If the district court fashions a different remedy, that remedy is imposed by the district court itself as an enforceable order." Id. Here, if the court offers its own independent conclusion that the manifestation determination was both substantively and procedurally appropriate, then the underlying decision necessarily cannot stand. While the label of "vacating" the underlying decision may be unnecessary, the practical effect of the decision will be the same.

8

In addition, and in the alternative, even if the request to "vacate" the underlying decision in the prayer for relief is not the correct form of relief under IDEA, this does not deprive this court jurisdiction over the Review Case. Under the Federal Rules of Civil Procedure "[e]very . . . final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c). Thus, "a meritorious claim will not be rejected for want of a prayer for appropriate relief." Holt Civic Club v. City of Tuscaloosa, 439 U.S. 60, 66 (1978). "[A]lthough the prayer for relief may be looked to for illumination when there is doubt as to the substantive theory under which a plaintiff is proceeding, its omissions are not in and of themselves a barrier to redress of a meritorious claim." Id. Therefore, the relief sought by the Board in its prayer for relief does not deprive the court of jurisdiction to review the underlying decision.

The parents also argue that this court lacks subject matter jurisdiction over the Review Case because the Board's complaint "focuses on an alleged sexual assault, which is not related to the IDEA and which was not determined by [the] ALJ." (Parents' Mem. (DE 12) at 12). This argument misses the mark for several reasons. First, the ALJ does, in fact, discuss an alleged "sexual assault" in the underlying decision. (E.g., DE 1-1 at 30-32, 40, 46). Second, findings regarding the nature of the "conduct in question" may be a critical part of evaluating the procedural and substantive appropriateness of the manifestation determination. 20 U.S.C. § 1415(k)(1)(E)(i). Third, and in any event, until the court has received the administrative record and any other evidence as is appropriate, it is premature to determine at this juncture whether the alleged misconduct at issue in this case constitutes a sexual assault. See 20 U.S.C. § 1415(i)(2)(C).

The parents further contend that this court lacks subject matter jurisdiction over the Board's request for "costs" in its prayer for relief, because they assert costs are available under IDEA only under limited circumstances not available here. The Board, however, does not assert that it is entitled

9

to costs provided specifically under IDEA. Rather, the Board makes clear in response to the instant motion that it seeks costs only "standard costs awarded to the prevailing party as a matter of course under Rule 54(d) of the Federal Rules of Civil Procedure." (Board's Mem. (DE 16) at 16). That rule states that "costs – other than attorney's fees – should be allowed to the prevailing party." Fed. R. Civ. P. 54(d). Accordingly, dismissal of that portion of the prayer for relief seeking costs is not warranted.

In sum, this court has subject matter jurisdiction to review the underlying decision. The requests for relief and allegations of sexual assault in the Board's complaint do not deprive this court of such jurisdiction. Therefore, that part of the parents' motion seeking dismissal of the Review Case for lack of subject matter jurisdiction is denied.

    2.       Statement of Claims

The parents argue that the Board fails to state a claim in the Review Case because of a lack of sufficient factual allegations. The court disagrees. For each of its claims, the Board provides specific allegations regarding categories of errors that are recognized in the law as a basis for challenging an IDEA administrative decision.

        a.       Counts One and Two – Lack of ALJ Authority and Deference

In its first two claims, the Board asserts that the ALJ lacked authority to reject the school administrator's findings as to the nature of E.T.'s misconduct and to substitute more benign findings, and that the ALJ failed to defer appropriately to findings of the school. In support of this claim, for example, it alleges that apart from the manifestation determination, school administrators independently determined the "conduct in question," and that the MDR Committee and the ALJ should have had no role in making additional assumptions or characterizations. (Compl. ¶¶ 135-136).

When drawing inferences in the light most favorable to the Board, as the court must at this juncture, these allegations state a claim under the IDEA. "[T]he district court must give due weight to the administrative proceedings, bearing in mind that a hearing officer's findings of fact are entitled to be considered prima facie correct." E.L. ex rel. Lorsson, 773 F.3d at 517. This is "akin to the traditional sense of permitting a result to be based on such fact-finding, but not requiring it." Doyle v. Arlington Cnty. Sch. Bd., 953 F.2d 100, 105 (4th Cir. 1991). "[A] reviewing court should examine the way in which the state administrative authorities have arrived at their administrative decision and the methods employed." Id. "When a state administrative appeals authority has departed from the fact-finding norm to such an extent," as to be "so far from the accepted norm of a fact-finding process designed to discover truth," "the facts so found as a result of that departure are entitled to no weight." Id. at 104-105.

In addition, "federal courts must avoid the temptation to substitute their own notions of sound educational policy for those of the school authorities which they review." Springer v. Fairfax Cnty. Sch. Bd., 134 F.3d 659, 663 (4th Cir. 1998). "The opinions of the professional educators are entitled to respect." Cnty. Sch. Bd. of Henrico Cnty., Virginia v. Z.P. ex rel. R.P., 399 F.3d 298, 307 (4th Cir. 2005). Such "deference is based on the application of expertise and the exercise of judgment by school authorities." Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1, 137 S. Ct. 988, 1001 (2017). Critically, while the "courts should, to the extent possible, defer to the considered rulings of the administrative officers," those administrative officers, including the ALJ here, "also must give appropriate deference to the decisions of professional educators." MM ex rel. DM v. Sch. Dist. of Greenville Cnty., 303 F.3d 523, 532–33 (4th Cir. 2002).

Based on the foregoing principles, the Board has stated a claim that the ALJ exceeded its authority in substituting its determination of the conduct in question for that of school administrators.

In reviewing this claim at this juncture, the court draws inferences in favor of the Board that school administrators had thoroughly examined and determined the conduct of E.T. and concluded that it constituted a sexual assault. (See, e.g., Compl. ¶¶ 76-89). The court also credits the Board's allegation that the parents did not challenge the characterization of the alleged misconduct in their due process complaint upon which the ALJ reviewed the manifestation determination. (Id. ¶ 128). It is thus reasonable to infer that the ALJ did not have authority to make a determination regarding the "conduct in question," 20 U.S.C. § 1415(k)(1)(E), and thus the ALJ's "process in resolving the case" was beyond accepted norms. J.P. ex rel. Peterson, 516 F.3d at 259.

The parents argue that the "hearing officer in a due process hearing is not only authorized but is obligated to make a determination of the student's actual conduct" and is not required to adopt the characterization of the school, citing South Lyon Community Schools, 50 IDELR 237 (SEA MI 2008) which is an unpublished decision by a state education agency in Michigan. That case, however, does not apply Fourth Circuit law regarding the standard for review by a district court in an IDEA case. (See, e.g., DE 16-1 at 9). In any event, South Lyon does not stand for the proposition cited. Rather, the ALJ in that case held that a "MD team violated the IDEA when it assumed that a middle schooler with an emotional disturbance intended to distribute controlled substances on school grounds." (Id. at 1). "Not only did the team mischaracterize the student's conduct, but her actual conduct as determined by school officials who investigated the incident was a manifestation of her disability." (Id.) (emphasis added). "Rather than describing the student's actual behavior as determined by the principal and superintendent – passing a note that said 'I have pillz' and naming two pills with no further intent found – the MD team wrote on the MD form that the student wrote a note that 'seemed to indicate she was initiating or intending to initiate' the sale or transfer of drugs." (Id.) (emphasis added). As such, the ALJ in South Lyon held that the MDR committee should have deferred to the

12

"actual conduct as determined by school officials," which is the approach advocated by the Board in its claims in the instant case. (See, e.g., Compl. ¶¶ 142-153). South Lyon does not require an ALJ to make an independent determination of the student's actual conduct, particularly in light of the allegation in the instant case that the due process complaint did not raise the issue for review by the ALJ. (Compl. ¶101).

In sum, the Board sufficiently has alleged facts that the ALJ lacked authority to reject the school administrator's findings as to the nature of E.T.'s misconduct, and that the ALJ failed to defer appropriately to findings of the school. Therefore, that part of the parents' motion seeking dismissal of counts one and two of the Board's complaint in the Review Case is denied.

b. Counts Three and Four – Findings of Fact and Conclusions of Law

In the third and fourth claims in the complaint, the Board alleges multiple respects in which the ALJ made erroneous conclusions of law and findings of fact. The Board contends these are "contrary to law, not supported by evidence in the record, or contradicted by substantial evidence in the record." (Compl. ¶ 155; see compl. ¶ 158). When read in context of the allegations and claims that precede them, the allegations in these claims permit an inference of errors in the underlying decision.

For example, the Board alleges that the following conclusion of law was erroneous: "[The MDR Committee] never properly investigated the incident to determine the cause of E.T.'s rule-breaking and attention seeking, impulsive behavior when he entered the classroom where he was not assigned and physically touched C.S." (Compl. ¶ 155.iii). It also alleges that the following finding of fact was erroneous: "[T]he school-based members of the MDR Committee and the Board's experts 'made assumptions' about E.T.'s behavior and 'treated E.T. more like a sexual predator than a 12-year-old kid with multiple behavioral and functional deficits.'" (Id. ¶ 158.l). The Board suggests that

13

this conclusion was contrary to law because "[t]here was ample evidence at the long-term suspension hearing to support the finding of sexual assault versus impulsive inappropriate conduct of a non-sexual nature." (Id. ¶ 87). According to the Board's complaint, this evidence includes, but is not limited to:

> a. E.T. left his classroom to go to another classroom he had no right to go to.
>
> b. The classroom he went to was the classroom of the victim student, C.S.
>
> c. C.S. was the same student whom E.T. had sexually touched in April 2021.
>
> d. E.T. did not have any history of sexually touching any student other than C.S.
>
> e. In the investigation, multiple students said E.T. had touched C.S. on the breast and/or buttocks.
>
> f. E.T. continued to touch C.S. after she told him to stop.
>
> g. C.S. became irate, and started cursing and chasing E.T.
>
> h. The substitute teacher in the classroom told C.S. that she could not use that type of language.
>
> i. C.S. told the substitute teacher that E.T. had touched her "very inappropriately."
>
> j. The assistant principal Shakisha Young said that C.S. came running to her in the hallway, crying and screaming, and stated "I don't care if I go to ISS [in-school suspension], but I want him to stop touching me."
>
> k. The failure of E.T. to provide an oral or written account of his version of the incident.

(Id.).

In sum, these allegations, when viewed in the light most favorable to the Board, permit a plausible inference that the ALJ "departed from the fact-finding norm to such an extent," as to be "so far from the accepted norm of a fact-finding process designed to discover truth." Doyle, 953 F.2d at 104, and that the ALJ did not "give appropriate deference to the decisions of professional educators." MM ex rel. DM, 303 F.3d at 533.

The parents argue that "[w]hile the Complaint makes many allegations of improper findings by [the ALJ], it fails to support these allegations with law." (Parents' Mem. (DE 12) at 22). The determination of dismissal under Rule 12(b)(6), however, turns on whether the complaint contains "sufficient <u>factual matter</u>, accepted as true, to state a claim to relief that is plausible on its face." <u>Iqbal</u>, 556 U.S. at 678. The court does not consider "legal conclusions" or "elements of a cause of action." <u>Nemet Chevrolet, Ltd.</u>, 591 F.3d at 255. "The failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters." <u>Riley v. Dozier Internet L., PC</u>, 371 F. App'x 399, 407 (4th Cir. 2010).

Thus, whether or not the Board has supported its factual allegations with law in the complaint is beyond the scope of the court's review under Rule 12(b)(6). Accordingly, the parents' motion to dismiss in this part is denied.

    c.    Count Five - Credibility Determinations

The Board asserts that the ALJ improperly made adverse credibility determinations regarding two school employees: Dr. Douglas Massengill, principal ("Massengill"); and Dr. Alicia Brophy-Dick, exceptional children director ("Brophy-Dick"). Generally, the court must give deference to "a trier of fact, who had the advantage of hearing the testimony, on the question of credibility." <u>Doyle</u>, 953 F.2d at 104. Nevertheless, the Board asserts that the "traditional deference accorded trial judges in assessing witness credibility is unwarranted in this case, given that the hearing was entirely virtual and was recorded," and that no more deference should be given to the ALJ than to this court, which could review the same recorded testimony. (Compl. ¶ 181). The United States Court of Appeals for the Fourth Circuit has recognized that "video conferencing may render it difficult for a factfinder in adjudicative proceedings to make credibility determinations and to gauge demeanor." <u>Rusu v. U.S. I.N.S.</u>, 296 F.3d 316, 322 (4th Cir. 2002).

15

Where the case now is at the pleading stage, and the court has not had the opportunity to review the administrative record, the court credits the inference raised by the Board regarding the court's opportunity to review the testimony of witnesses in the hearing on the underlying decision. Accordingly, the parents' motion to dismiss is denied in this part where it seeks dismissal of this claim as a matter of law. In so holding, the court expresses no opinion on the merits of this claim.

3. Fee Case

The Board argues that the Fee Case must be dismissed as a matter of law because the parents did not timely file their complaint within a 30-day limitations period. The Board recognizes that while IDEA provides a 90-day statute of limitations for an "aggrieved party" to pursue a civil action in federal court, see 20 U.S.C. § 1415(i)(2)(A), it is silent on the limitations period for a "prevailing party" to pursue a claim for attorney's fees in federal court. See 20 U.S.C. § 1415(i)(3). The Board, nonetheless, urges the court to apply a 30-day limitations period for a civil action on an administrative decision under North Carolina law, as it provides the "most analogous statute of limitations." (Fee Case, DE 12 at 5 (citing N.C. Gen. Stat. § 115C-109.6)). Dismissal on this basis is premature at this juncture.

A motion to dismiss under Rule 12(b)(6) "generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007). "But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." Id. "This principle only applies, however, if all facts necessary to the affirmative defense clearly appear on the face of the complaint." Id.

In considering a statute of limitations defense, "district courts should conduct a thorough examination of the facts to determine if reasonable grounds exist for an equitable tolling of the filing

16

period." Harvey v. City of New Bern Police Dep't, 813 F.2d 652, 654 (4th Cir. 1987). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). "[A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003) (emphasis added). Nevertheless, the United States Supreme Court has "followed a tradition in which courts of equity have sought to relieve hardships which, from time to time, arise from a hard and fast adherence to more absolute legal rules, which, if strictly applied, threaten the evils of archaic rigidity." Holland v. Florida, 560 U.S. 631, 650 (2010).

In this case, adjudication of the Board's statute of limitations defense is premature because of the lack of clarity in the statue providing for a 30-day limitations period and the availability of equitable tolling suggested by the allegations in the Fee Case. IDEA is silent on the limitations period for a "prevailing party" to pursue a claim for attorney's fees in federal court. See 20 U.S.C. § 1415(i)(3). The issue of which statute of limitations under North Carolina law is "the most analogous state statute of limitations" for filing a fee petition in federal court is a matter of first impression in this circuit. C.M. ex rel. J.M. v. Bd. of Educ. of Henderson Cnty., 241 F.3d 374, 379 (4th Cir. 2001) (borrowing a 60-day North Carolina limitations period for requesting a due process hearing under IDEA); King ex rel. King v. Floyd Cnty. Bd. of Educ., 228 F.3d 622, 623 (6th Cir. 2000) (applying a "30–day limitations period prescribed by Kentucky law"). Thus, it cannot be said that this is an instance where "circumstances of individualized hardship" should not "supplant the rules of clearly drafted statutes." Rouse, 339 F.3d at 246 (emphasis added).

This case also is not one in which "all facts necessary to the affirmative defense clearly appear on the face of the complaint," given the parents' assertion of equitable tolling. Goodman, 494 F.3d at 464 (4th Cir. 2007). Here, the parents filed the Fee Case on the same date that the Board filed the Review Case, giving rise to an inference that they have been "pursuing [their] rights diligently." Pace, 544 U.S. at 418. Additional circumstances suggested by the parents, give rise to an inference that an "extraordinary circumstance stood in [their] way" in filing the Fee Case within a 30-day time limit. Id.

In particular, the underlying decision by the ALJ does not provide notice of the time period for filing a fee petition. Rather, it states only that "[a]ny party aggrieved by the findings and decision of an Administrative Law Judge under G.S. 115C-109.6 may institute a civil action in State court within 30 days after receipt of the notice of the decision or in federal court as provided in 20 U.S.C. § 1415," (Fee Case DE 1-10 at 53). Upon entry of the underlying decision by the ALJ, the parents allegedly expected the Board to file its own appeal of the decision in state court, within that 30 day period, rendering any fee petition by the parents potentially premature. (See Parents' Mem. (DE 13) at 23-24). Moreover, the parents rely upon a North Carolina Department of Public Instruction booklet entitled "Parent Rights & Responsibilities in Special Education: N.C. Notice of Procedural Safeguards" that discusses attorney's fees and costs but does not provide a statute of limitations period for filing complaints of attorney's fees and costs. (See DE 13-1 at 35-36).

The court expresses no opinion on the ultimate resolution of the issue of statute of limitations and equitable tolling on a more complete record. It suffices at this juncture that resolution of the statute of limitations defense is not warranted upon the Board's motion to dismiss, in light of the court's duty to "conduct a thorough examination of the facts to determine if reasonable grounds exist for an equitable tolling of the filing period." Harvey, 813 F.2d at 654. The court notes further that

the complex issues raised by both the statute of limitations and equitable tolling may become moot in the event the Board succeeds in the Review Case to obtain a declaration that it is a prevailing party in place of the parents. The court leaves these issues for determination, if at all, at a later juncture.

Accordingly, the Board's motion to dismiss the Fee Case is denied.

## CONCLUSION

Based on the foregoing, the motions to dismiss by the Board in the Fee Case (No. 7:22-CV-99-FL, DE 11), and by the parents in the Review Case, (No. 7:22-CV-100-FL, DE 11) are DENIED. Where the parents have filed an answer in the Review Case, an initial order regarding planning and scheduling will follow in that case. In the Fee Case, in accordance with Federal Rule of Civil Procedure 12(a)(4), the Board must serve a responsive pleading to the complaint within 14 days of entry of this order.

SO ORDERED, this the 14th day of December, 2022.

LOUISE W. FLANAGAN
United States District Judge